## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BRIAN and ANGIE BEATTIE, on behalf of their minor daughter, A.B., | : : : : | Case No. 4:13-cv-02655 |
| Plaintiffs | : : | (Judge Brann) |
| v. | : : | |
| LINE MOUNTAIN SCHOOL DISTRICT, | : : : | |
| Defendant. | : | |

**MEMORANDUM**
January 13, 2014

The case before the Court concerns whether a twelve year old girl can

pursue her passion for wrestling on her public school's male wrestling team.  Line

Mountain School District ("Defendant" or "School District") maintains a policy

prohibiting female students from participating on the all-male junior high and high

school wrestling teams.  Plaintiffs Brian and Angie Beattie bring this action on

behalf of their minor daughter, A.B., claiming the Defendant's policy constitutes

unlawful discrimination on the basis of sex in violation of the Equal Protection

Clause of the Fourteenth Amendment to the United States Constitution and 42

U.S.C. § 1983, and the Equal Rights Amendment of the Pennsylvania

Constitution.[1] Pls.'s Compl. 1, Oct. 28, 2013, ECF No. 1.

The Plaintiffs filed a Motion for a Temporary Restraining Order and a Preliminary Injunction on October 30, 2013 (ECF No. 5). The Defendant was temporarily restrained from taking any action that would interfere with A.B.'s efforts to participate on the Line Mountain junior high wrestling team pursuant to this Court's Order of November 1, 2013 (ECF No. 8). The Court subsequently conducted a hearing on the matter on November 21, 2013, and took testimony from the parties and their respective witnesses. The Court then issued a briefing schedule. After review and consideration of the briefs submitted, this matter is now ripe for disposition.

As elaborated below, the Court grants the Plaintiffs's Motion for a Preliminary Injunction (ECF No. 5). The Court makes the following findings of fact and conclusions of law.

## I. FINDINGS OF FACT

The Plaintiff, A.B., is a twelve year old female student who attends seventh grade at Line Mountain Middle School. Transcript, Brian Beattie ("B. Beattie"), 12:11; 14:17–20; 15:6–8., Nov. 27, 2013, ECF No. 36 [hereinafter Tr.]. Line

---

[1] The Court has jurisdiction over the matter under 28 U.S.C. §§ 1331; 1343; 1367; 2201; 2202. Venue is proper pursuant to 28 U.S.C. § 1391(b).

Mountain School District, which consists of the Middle School and a High School, is a public school district located in southern Northumberland County, Pennsylvania. Tr., David M. Campbell[2] ("Campbell"), 162:22–25.

A.B. began wrestling on her school team in Le Mars, Iowa in third grade, and continued wrestling there during the fourth and fifth grades. Tr., A.B., 63:13–17. On that team, A.B. practiced and competed with both boys and girls. Tr., B. Beattie, 19:13–16, 20:8–10; A.B., 63:20–21.

In the summer of 2012, the Beattie family moved to Pennsylvania, and A.B. began attending Line Mountain Middle School that autumn. Tr., B. Beattie, 13:5–10; A.B., 63:23–25. During that 2012–13 school year, A.B. wrestled on the Line Mountain youth team, which is open to students through sixth grade. Tr., Ronald Neidig[3] ("Neidig"), 41:5–14; A.B., 64:3–7; Campbell, 163: 21–164:8–10.

On the youth wrestling team, A.B. practiced and competed against boys and girls, including some older, high school age male wrestlers. Tr., A.B. 57:7–9, 64:8–12, 73:9–10. A.B. enjoyed some level of success on the team, participating in every dual meet and achieving a record of five wins and three losses against

---

[2] David M. Campbell is the Superintendent of Line Mountain School District. Def.'s Witness List 1, Nov. 18, 2013, ECF No. 22.

[3] Ronald Neidig is a member of the Line Mountain School Board. Def.'s Witness List, at 2.

boys and one girl. Tr., A.B., 65:17–20; Neidig, 49:3–9, 54:12–16. A.B. also

participated in at least four tournaments against boys and achieved second and

third place finishes. Tr., A.B., 66:3–16. No boy refused to wrestle A.B. due to her

gender. Tr., B. Beattie, 20:23–21:2.

Toward the end of that 2012–13 youth wrestling season, Mr. Beattie learned

that the School District maintains a policy prohibiting girls from participating on

the boys' junior high and high school wrestling teams. Tr., B. Beattie, 16:12–23;

Pls.'s Ex. 1, Nov. 18, 2013, ECF No. 20-1. District Policy 123.1, entitled "Gender

Participation on Athletic Teams," was adopted July 26, 2005, and prohibits female

students from participating on male varsity, junior varsity, and junior high athletic

teams because of safety concerns regarding the "physiological differences between

male and female athletes."[4] Tr., B. Beattie, 16:12–23; Pls.'s Ex. 1, Nov. 18, 2013,

---

[4] The full text of the School District Policy reads:

The purpose of this policy is to address the following:

1.  The physiological differences between male and female athletes.
2.  The practice of the Line Mountain School District of maintaining
    interscholastic athletic teams for both males and females in all sports other
    than contact sports.

Due to the fact that the physical size, speed and power of male athletes could
create a competitive disadvantage and a hazard to the health and safety of female
athletes, the Line Mountain School District prohibits male participation on female
varsity, junior varsity and junior high interscholastic athletic teams and prohibits
female participation on male varsity, junior varsity, and junior high interscholastic
athletic teams, except when any such team is specifically designated a co-ed team

ECF No. 20. Mr. Beattie realized this policy would prevent A.B. from wrestling the following year, the 2013–14 season, because she would be ineligible for the youth team due to age and the junior high team due to gender.

After learning about this policy, Mr. Beattie attended Line Mountain School Board meetings on April 9 and 23, 2013 to investigate the impact of the policy on A.B.'s prospects to continue wrestling. Tr., B. Beattie, 16:24–25, 17:4–7. At the meetings the School Board informed Mr. Beattie that it would enforce the Policy, and that A.B. would not be permitted to participate on the junior high wrestling team in the coming year. Tr., B. Beattie, 17:22–24, 18:1–7.

The School District asserts it maintains Policy 123.1 because of the obligations imposed by its *in loco parentis* relationship with its students.[5] Tr., Campbell, 166:8–16. This obligation inspires the School District's stated objective to protect all students and provide a safe environment for students. Tr., Troy Laudenslager[6] ("Laudenslager"), 88:19–20; Campbell, 166:19. To do so, the

---

by the administration, with the formal approval of the School Board.

School District Policy 123.1, "Gender Participation on Athletic Teams," Pls.'s Ex. 1.

[5] *"In loco parentis"* is defined as the "[s]upervision of a young adult by an administrative body such as a university." BLACK'S LAW DICTIONARY 858 (9th ed. 2009).

[6] Troy Laudenslager is the President of the Line Mountain School Board. Def.'s Witness List, at 2.

District asserts it "must identify and try to foresee potential problems for students including social, mental, and moral dilemmas, especially, in this case, with regard to athletics, given the clear anatomical differences between adolescent males and females." Def.'s Proposed Findings Fact Conclusions Law v, ¶ 11, Dec. 16, 2013, ECF No. 42 [hereinafter Def.'s Br.]; Tr., Campbell, 166:22–23. The School District maintains that Policy 123.1 and its accompanying prohibition on females wrestling on the boys team are vital to those efforts. Tr., Lauren Hackenburg[7] ("Hackenburg"), 134:10–25.

The School Board maintains that a principle justification for prohibiting females from wrestling is the anatomical differences between males and females: that boys are generally stronger and have less body fat than girls, and, consequently, that girls are at a greater risk of injury than boys. Tr., Neidig, 44:3–7, 45:11–12; 46:9–16, 56:12–18; Laudenslager, 87: 10–88:1, 107:17–20; Hackenburg, 134:17–135:1, 134:23–135:1. According to the School District, these generalized anatomical differences render the prohibition on female wrestlers necessary to protect student safety. School District witnesses agreed, however, that individual females may be stronger than individual males of the

---

[7] Lauren Hackenburg is a member of the Line Mountain School Board. Def.'s Witness List, at 2.

same weight, and also that some boys could have more body fat than girls of the same weight.[8] Tr., Neidig, 53:12–15; Laudenslager, 97:18–23, 98:18–22; Hackenburg, 145:13–16; Darin Keim[9] ("Keim"), 154:15–23. The School District also could not identify a single example where a female wrestler was injured by a male wrestler, and agreed that boys who wrestle are also at some risk of injury. Tr., Neidig, 46:14–16, 50:7–8, 53:10–11, 57:20–21, 60:4–5; Laudenslager, 112:23–25; Campbell, 180:2–4, 14–18.

Another justification advanced by the School District for maintaining the Policy is that girls are at a greater risk of inappropriate sexual contact and harassment when they wrestle due to their obvious anatomical differences. Tr., Neidig, 47:22–48:4; Laudenslager, 86:17–20, 125:9–127:10; Hackenburg, 134:17–21, 138:5–15. The School District witnesses agreed, however, that both sexual harassment and the touching of intimate body parts could occur just as easily with two boys wrestling. Tr., Laudenslager, 122:25–123:3; Hackenburg, 146:11–13; Campbell, 171:7–10. The School District does not prohibit boys from wrestling boys on this basis. Tr., Neidig, 53:3–5.

---

[8] Wrestling is a weight-based sport, meaning that wrestlers are weighed and divided into classes that restrict athletes to wrestling only other athletes of the same or similar weight. Tr., Laudenslager, 86:21–25; 87:1–6.

[9] Darin Keim is a Wrestling Coach for Line Mountain School District. Def.'s Witness List, at 2.

Moreover, A.B. testified that she "had been taught the difference between good touching and bad touching," and that if someone were to ever touch her inappropriately she would push them away "and go get help." Tr., A.B., 64:13–25. The School District maintains policies prohibiting unlawful harassment and prescribing means for redress and discipline. Tr., Neidig, 51:18–23; Laudenslager, 119:4–120:7; Campbell, 181:11–182:10; Pls.'s Exs. 7, 8, 9.

A third justification the School Board asserts for the prohibition is the perceived emotional, psychological, and moral risks of girls wrestling boys. Tr., Laudenslager, 86:9–11; Hackenburg, 140:16–19. The School District is "concerned with the potential lowering of students' inhibitions, desensitizing them and possibly impacting moral standards for all those who participate in the sport." Def.'s Br., at x, ¶ 44; Tr., Laudenslager, 128:14–20. The School District did not present expert testimony regarding any emotional or psychological risks from allowing coeducational wrestling. Its evidence consisted of lay opinions "that there's a certain moral wrongness" to girls and boys wrestling, since physical aggression towards girls is "inconsistent with what's being taught in homes." Tr., Hackenburg, 134: 18–25, 142:7–13.

Despite the School District's concerns, the Beatties sought a means to avoid the Policy and ensure A.B. would wrestle on the junior high team the coming year.

After the meeting on April 23, 2013, when the School Board informed Mr. Beattie it would enforce the Policy, Mr. Beattie contacted the American Civil Liberties Union ("ACLU") seeking legal representation to challenge the Policy. Tr., B. Beattie, 21:6, 11, 25:5–8. On June 8, 2013, Mr. Beattie also filed a complaint with the Pennsylvania Human Relations Commission (PHRC) on the advice of the Office of the Attorney General of Pennsylvania. Tr., B. Beatties, 21:6–25; Pls.'s Ex. 3.

As the 2013–14 school year approached later that summer, Mr. Beattie requested that the PHRC seek a preliminary injunction to require the School District to allow A.B. to wrestle on the junior high team; the PHRC declined to do so. Tr., B. Beattie, 21:22–22:4. He then contacted the ACLU who responded several weeks later informing Mr. Beattie it lacked the resources to assist him, but referred him to the Women's Law Project. Tr., B. Beattie, 22:5–8; 24:13–19.

On or about September 16, 2013, Mr. Beattie contacted the Women's Law Project, which agreed to represent the Plaintiffs in this matter. Tr., B. Beattie, 22:9–23:8. On October 15, 2013, the Beatties' counsel then requested that the School District, consistent with its obligations under the state and federal constitutions, notify them by October 22, 2013, concerning whether the School District would allow A.B. to participate on the wrestling team. Tr., Campbell,

187:14–21; Pls.'s Ex. 5. The School District did not alter its previous stance, and the Beatties therefore filed the instant action on October 28, 2013. See Tr., Campbell, 187:14–25; Pls.'s Compl., Oct. 28, 2013, ECF No. 1. Mr. Beattie withdrew the PHRC complaint on November 13, 2013 in favor of the matter pending before this Court. Tr., B. Beattie, 22:9–23:8.

There exist no equivalent opportunities available to A.B. that provide the same frequency and quality of wrestling that participation on the Line Mountain junior high team offers. The School District team practices five days per week, with one additional practice through Bucknell University's Bison Legend Club, a coeducational wrestling program. Tr., B. Beattie, 26:6–7; A.B., 79:12–14; Laudenslager, 99:12–15. The Bison Legend Club holds three practices per week at Bucknell, which A.B. could attend—two of those practices coincide with the School District's team practices, which is why the School District team only attends one per week. Tr., A.B. 79:6–14. Attending these sessions costs $10.00 per practice, which School District witnesses testified the School District booster club pays for its wrestlers and would pay for A.B.'s participation in the program. Tr., Laundenslager, 104:11–20; Keim, 160:5–11; Campbell, 175:25–176:4.

The Bison Legend practice is a thirty-five (35) minute drive from the Beatties' home and they would be unable to regularly drive A.B. to the practices.

Tr., B. Beattie, 12:9–11, 13:2–3, 25:25–26:8, 26:17–27:3. Furthermore, if A.B. were to only participate in the Bison Legend Club for three practices per week, it would not provide the same quality wrestling experience that a five day per week schedule on the School District's team offers.

And while women's wrestling clubs do exist, the closest in proximity is located in Harrisburg, Pennsylvania. Harrisburg is approximately an hour's drive from the Beatties' home, and is therefore not a viable option for A.B. to regularly attend. Tr., B. Beattie, 35:24–36:7. Consequently, the Beatties pursued this action in order for A.B. to wrestle on the Line Mountain junior high wrestling team.

## II.    CONCLUSIONS OF LAW

The United States Court of Appeals for the Third Circuit has recognized that "the grant of injunctive relief is an extraordinary remedy, which should be granted only in limited circumstances." Instant Air Freight Co. v. C.F. Air Freight, Inc., 882 F.2d 797, 800 (3d Cir. 1989) (internal quotations and citation omitted). In order to obtain a preliminary injunction, the moving party must demonstrate (1) a reasonable probability of success on the merits; (2) whether the movant will be irreparably harmed by denying the injunction; (3) whether there will be greater harm to the non-moving party if the injunction is granted; and, (4) whether granting the injunction is in the public interest. B.H. ex rel. Hawk v.

11

Easton Area Sch. Dist., 725 F.3d 293, 302 (3d Cir. 2013); Crissman v. Dover

Downs Entm't, Inc., 239 F.3d 357, 364 (3d Cir. 2001). The Court first considers

whether the Plaintiff has a reasonable probability of success on the merits.

## A. Probability of Success on the Merits

### 1. Equal Protection Clause

A defendant seeking to uphold a classification based on gender that is

challenged under the Equal Protection Clause of the Fourteenth Amendment to the

United States Constitution[10] must show an "exceedingly persuasive justification

for the classification." Mississippi Univ. for Women v. Hogan, 458 U.S. 718, 724

(1982) (internal citation and quotation omitted). To survive intermediate scrutiny,

the "classification must be substantially related to an important governmental

objective." Clark v. Jeter, 486 U.S. 456, 461 (1988); see also Wengler v.

Druggists Mut. Ins. Co., 446 U.S. 142, 150 (1980). Requiring that close

relationship between the classification and the government objective is important

"to assure that the validity of a classification is determined through a reasoned

analysis rather than through the mechanical application of traditional, often

inaccurate, assumptions about the proper roles of men and women." Hogan, 458

---

[10] "No State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1

12

U.S. at 725–26.

Gender classifications subject to an Equal Protection Clause challenge "must not rely on overbroad generalizations about the different talents, capacities or preferences of males and females." United States v. Virginia, 518 U.S. 515, 533. A justification for the classification must "be genuine, not hypothesized or invented *post hoc* in response to litigation." Id. Moreover, "[e]ven a true generalization about the class is insufficient reason for disqualifying an individual to whom the generalization does not apply." City of Los Angeles, Dep't of Water & Power v. Manhart, 435 U.S. 702, 708 (1978).

There is no dispute that the School District denies A.B. the opportunity to wrestle solely because she is a female. The School District bases its refusal on its Policy 123.1, which prohibits girls from participating on male junior and senior high interscholastic athletics teams, except when the team is specifically designated co-educational by the administration with the formal approval of the School Board. Pls.'s Br. at 12; Pls.'s Ex. 1. Wrestling is not so designated. Consequently, the School District must provide a genuine justification explaining why the classification based on gender is substantially related to an important government interest. See, e.g., Clark, 486 U.S. at 461.

The School District articulates several different but related justifications for

13

the classification, most grounded in the concept of *in loco parentis,* including: student safety; inappropriate physical contact occurring between opposite sexes; the responsibility of preventing sexual harassment and misconduct; and relatedly, a perceived "lowering of students' inhibitions, desensitizing them and possibly impacting moral standards for all of those who participate in the sport." Def.'s Br., at ¶ 43. The Court considers these arguments seriatim.

      a.   *Student Safety*

Providing a safe environment for students in a public school is an important government interest. See Adams By & Through Adams v. Baker, 919 F. Supp. 1496, 1504 (D. Kan. 1996). A policy preventing girls from wrestling, however, is not substantially related to that interest. Id.; Saint v. Nebraska Sch. Activities Ass'n, 684 F. Supp. 626, 628–29 (D. Neb. 1988) (finding that prohibiting female students from wrestling when any boy, regardless of physical ability, was permitted to wrestle was not substantially related to promoting student safety).[11]

---

[11] In Saint v. Nebraska School Activities Association, 684 F. Supp. 626, 628–29 (D. Neb. 1988), Chief Judge Strom compiled citations to a litany of cases involving Equal Protection Clause challenges to athletic prohibitions on women participation that also support this legal posture, including: Fortin v. Darlington Little League, Inc., 514 F.2d 344 (1st Cir. 1975); Morris v. Michigan State Board of Education, 472 F.2d 1207 (6th Cir. 1973); Lantz by Lantz v. Ambach, 620 F. Supp. 663 (S.D.N.Y. 1985); Force by Force v. Pierce City, R-VI School District, 570 F. Supp. 1020 (W.D. Mo. 1983); Leffel v. Wisconsin Interscholastic Athletic Ass'n, 444 F. Supp. 1117 (E.D. Wisc. 1978); Hoover v. Meiklejohn, 430 F. Supp. 164 (D. Colo. 1977); Carnes v. Tennessee Secondary School Athletic Ass'n, 415 F. Supp. 569 (E.D. Tenn. 1976); Clinton v. Nagy, 411 F. Supp. 1396 (N.D. Ohio 1974); Reed v. Nebraska School Activities Ass'n, 341 F.

The School District did not present any evidence on this point that demonstrated A.B.'s safety is at a greater risk because of her gender than other students, aside from generalized assumptions about the biological differences between male and female physical strength. Even if these assumptions represent "real differences between the sexes, rather than sexual stereotypes," this justification fails to satisfy intermediate scrutiny because there is no evidence that the policy effectively achieves the stated objective of student safety. Lafler v. Athletic Bd. of Control, 536 F. Supp. 104, 106 (W.D. Mich.1982) (citing Michael M. v. Superior Ct. of Sonoma Cnty., 450 U.S. 464 (1981); Craig v. Boren, 429 U.S. 190 (1976)); see also Adams, 919 F. Supp. at 1504.

The School District also did not identify a single female wrestler who had been injured by a male wrestler as a consequence of gender or any specific harm that a female suffered while wrestling, including A.B. Tr., Neidig, 46:14–16; 53:6–9; Campbell, 180: 14–18. The School District also agreed that boys who wrestle are at risk of injury and did not provide evidence that girls are disproportionately so. Tr., Neidig 50:7–8, 53:10–11, 57:20–21, 60: 4-5; Laudenslager, 112:23–25; Campbell 180:2–4.

Furthermore, the policy preventing all girls from wrestling is

---

Supp. 258 (D. Neb. 1972).

simultaneously both underinclusive and overinclusive. It is underinclusive because boys, some of whom may be weaker than some girls when considered on an individual rather than abstract level, are allowed to wrestle while their safety may be equally or more at risk than A.B. or other capable girls. Indeed, "any boy may join the wrestling team, regardless of his body size, strength level, speed capability, muscle power output or any other factor which might have a bearing on his potential for injury." Saint, 684 F. Supp. at 629. The policy is also overinclusive, because it prevents females, including A.B., from wrestling when they may be equally as strong or stronger than some boys on an individual basis. See, e.g., Lantz by Lantz v. Ambach, 620 F. Supp. 663, 665 (S.D.N.Y. 1985).

To uphold the classification on this basis would "suggest the very sort of well-meaning but overly 'paternalistic' attitude about females which the Supreme Court has viewed with such concern." Force by Force v. Pierce City R-VI School Dist., 570 F. Supp. 1020, 1029 (W.D. Mo. 1983) (citing Frontiero v. Richardson, 411 U.S. 677 (1973)). Consequently, because the School District presented no credible evidence that the policy preventing girls from wrestling is substantially related to the important interest of student safety, this is not a sufficient justification to keep A.B. from participating in this organized sport.

b.   *Inappropriate Contact and Preventing Sexual*
     *Harassment and Misconduct*

The School District failed to establish that girls are at a greater risk of

sexual contact or sexual harassment than are boys, a stated justification for its

policy prohibiting female wrestlers. The School District asserts that, due to

anatomical differences, girls are at a pronounced risk of sexual contact and

harassment when they wrestle, which may well be true. Tr., Neidig, 47:22–48:4;

Laudenslager, 86:17–20, 125:9–127:10; Hackenburg, 134:17–21, 138:5-15. The

School District also agreed, however, that the sport of wrestling presents

opportunities for inappropriate touching and sexual harassment regardless of

gender. Tr., Laudenslager, 122:25-123:3; Hackenburg, 146:11–13; Campbell,

171:7–10. For example, a boy could touch the genital area or buttocks of another

boy while wrestling with the same ease as he could touch sensitive parts of the

anatomy of a female wrestler. Tr., Neidig, 52:23–53:2; Hackenburg, 146:11–13.

The School District does not forbid boys from wrestling on this basis, although

they are also exposed to the potential for inappropriate contact.

The School District could not articulate any specific instances of males

inappropriately touching females while participating in wrestling, and offered no

examples where a female complained of this behavior. Tr., Neidig, 55:4–9;

Laudenslager, 129:11–15. Moreover, A.B. demonstrated that she did not experience any difficulties with inappropriate touching in her past wrestling experience, albeit at a younger age. Tr., A.B. 64:13–25. She testified that she understood "the difference between good touching and bad touching" and would "go get help" if bad touching occurred. Id.; Tr., B. Beattie, 19:22–23. Indeed, "wrestling is an athletic activity and not a sexual activity. There is no reason to suspect that girls who seek to join the wrestling team would be likely to mistake the contact which is inherent in the sport for sexual misconduct." Adams, 919 F. Supp. at 1504.

The School District also raised a valid concern about male coaches demonstrating moves on female wrestlers. Tr., Laudenslager, 126: 13–16; Keim, 149:13–20. Nevertheless, they agreed that coaches need not demonstrate moves on each individual wrestler, and could demonstrate on one wrestler, for instance a boy, while the other wrestlers observe. Tr., Keim, 153:13–19.

Related to this potential for inappropriate touching, the School District expressed concern that allowing girls to wrestle would make its job of preventing sexual harassment and the resulting lawsuits more difficult. The School District did not, however, provide any evidence beyond conclusory assertions to support this contention. Moreover, Superintendent Campbell agreed that School District

policies prohibit unlawful harassment and that any offending parties could be disciplined regardless of gender. Tr., Neidig, 51:18–23; Laudenslager, 119:4–120:7; Campbell, 181:11–182:10; Pl.'s Exs. 7, 8, 9. "A school district best avoids sexual harassment litigation by acting to prevent sexual harassment rather than excluding females from participating in activities." Adams, 919 F. Supp. at 1504. Accordingly, the School District failed to demonstrate that its policy prohibiting girls from wrestling is substantially related to any of these stated government interests.

### c. *Articulated Moral Concerns*

Finally, the School District asserted what appeared to be its paramount justification for prohibiting female wrestlers: to protect students against the perceived psychological and moral degradation accompanying coeducational wrestling. The School District justifies excluding girls from wrestling as an attempt "to foresee potential problems for students including social, mental, and moral dilemmas." Def.'s Br., at v, ¶ 11.

The School District's primary evidence in this respect is the testimony of Lauren Hackenburg, a lay witness and member of the School Board. Although the School Board seeks to embellish Ms. Hackenburg's master's degree in exceptionality and work as a therapist for special needs students, she was not

qualified as an expert and her testimony is consequently limited to her own experience and perception—not any scientific, technical, or other specialized knowledge. FEDERAL RULE OF EVIDENCE 701; Def.'s Br. at x, ¶ 45. Consequently, her testimony that there is "a certain moral wrongness to" girls wrestling with boys, and that "[i]t's inconsistent with what's being taught in homes," stems from her role as an educator and a mother of sons. Tr., Hackenburg, 142:7–8. Nevertheless, she was not aware that one of her sons had wrestled A.B. prior to the hearing, nor, apparently, had her son complained that he was disturbed in some way because he had to wrestle a girl. Tr., Hackenburg, 144:20–145:12.

Besides Hackenburg's testimony and other unsupported conclusory statements concerning the perceived moral opprobrium of coeducational wrestling, the School District offers no evidence that these concerns rise to the level of an important government interest. Indeed, "[i]t is not the duty of the school to shield students from every situation which they may find objectionable or embarrassing due to their own prejudices." Adams, 919 F. Supp. at 1504. These attitudes, although well-intentioned, are simply not sufficient grounds for a gender-based classification under the Equal Protection Clause. See id.

The School District does not provide sufficient evidence that any of its

20

stated reasons for prohibiting A.B. from wrestling amounts to the "exceedingly persuasive justification" for the classification. Virginia, 518 U.S. at 534. Consequently, A.B. is likely to prevail on the merits of her Equal Protection Clause claim.

 2. Pennsylvania Equal Rights Amendment

The Pennsylvania Equal Rights Amendment[12] (ERA) prohibits the use of sex as a distinction except when one is "reasonably and genuinely based on physical characteristics unique to one sex." Fisher v. Dept. of Pub. Welfare, 509 Pa. 293, 314, 502 A.2d 114, 125 (1985) (internal quotation and citation omitted). Once a unit of government permits participation in interscholastic sports, "it must do so on a basis which does not discriminate in violation of the constitution." Com. By Packel v. Pennsylvania Interscholastic Athletic Ass'n, 18 Pa. Cmwlth. 45, 51, 334 A.2d 839, 842 (1975); see also Henderson v. Henderson, 458 Pa. 97, 327 A.2d 60 (1974).

Interpreting the ERA in the context of a Pennsylvania Interscholastic Athletic Association by-law prohibiting girls from competing or practicing against boys in athletic contests, the Commonwealth Court of Pennsylvania wrote: "[t]he

_____

[12] "Equality of rights under the law shall not be denied or abridged in the Commonwealth of Pennsylvania because of the sex of the individual." PA. CONST. art. I, § 28.

21

notion that girls as a whole are weaker and thus more injury-prone, if they compete with boys, especially in contact sports, cannot justify the By-Law in light of the ERA." Id. at 843. The court further elucidated that, "[i]f any individual girl is too weak, injury-prone, or unskilled, she may, of course, be excluded from competition on that basis but she cannot be excluded solely because of her sex without regard to her relevant qualifications." Id.

Applying these standards to the case before the Court, A.B. is likely to succeed on the merits of her claim under the ERA. See id. As previously discussed, the School District provided no competent evidence that A.B. "is too weak, injury-prone, or unskilled" to be excluded from competition on an individual basis. Id. It is also unlikely that the School District's generalizations based on sex and student safety pass muster under this standard.[13] Accordingly, A.B. demonstrates a reasonable probability of success on the merits.

## B.    The Balance of the Equities Is in Plaintiffs's Favor

The moving party has the burden of proving a "clear showing of immediate irreparable injury." Continental Group, Inc. v. Amoco Chemicals Corp., 614 F.2d

---

[13] The School District's reliance on Bartholomew on Behalf of Bartholomew v. Foster, 115 Pa. Cmwlth. 430, 438, 541 A.2d 393, 397–98 (1988), to support a classification that is "reasonably and genuinely based on physical characteristics unique to one sex" is not persuasive. See Def.'s Br., at xix, ¶ 18. That case concerned sex-based gender classifications pertaining to insurance rates, which the Commonwealth Court of Pennsylvania ultimately held unconstitutional. Bartholomew, 541 A.2d at 397–98.

351, 359 (3d Cir. 1980) (internal quotations and citation omitted). The "requisite feared injury or harm must be irreparable not merely serious or substantial," and "must be of a peculiar nature, so that compensation in money cannot atone for it." Glasco v. Hills, 558 F.2d 179, 181 (3d Cir. 1977).

Deprivation of a constitutional right alone constitutes irreparable harm as a matter of law, and no further showing of irreparable harm is necessary. Buck v. Stankovic, 485 F. Supp. 2d 576, 586 (M.D. Pa. 2007); Adams, 919 F. Supp. at 1505; Saint, 684 F. Supp. at 628.

Furthermore, it is the conclusion of this Court that without injunctive relief A.B. would suffer irreparable harm in her development as a wrestler because she would miss opportunities to practice and compete. Tr., B. Beattie, 25:21–22, 27:19–21; Neidig, 53:24–54:6; A.B., 72:7–15; Keim, 157:22–23. There are no available opportunities to participate in the sport that are of the same frequency and quality as those accompanying the School District's wrestling program. B. Beattie, 12:9–11, 13:2–3, 25:25–26:8, 26:6–7, 26:17–27:3, 35:24–36:7; A.B., 79:6–7, 79:12–1. These missed opportunities would cause A.B. to fall behind in her athletic development and prevent her from competing to her fullest potential in

the future, including pursuing her aspirations at the collegiate level.[14]  Tr., A.B.,

72:7–15.

In contrast, the School District did not present evidence of harm from A.B.

wrestling that outweighs A.B.'s stated harm if the injunction is denied.  As

articulated, the School District's contentions regarding student safety and

psychological and moral harms are not sufficient, because they are unsupported by

either sufficient competent evidence or case law.  See supra, at 3–10.

Consequently, the balance of the harms falls in A.B's favor.

### 1.    Laches Does Not Apply

The Court observes that Plaintiffs could have more diligently pursued this

matter in its nascent stage, but they did not tarry so long that the doctrine of laches

applies to bar relief.  "An unreasonable delay in seeking an injunction negates the

presumption of irreparable harm."  FMC Corp v. Control Solutions, Inc., 369 F.

Supp. 2d 539, 582 (E.D. Pa. 2005).  Laches is an affirmative equitable defense that

can negate irreparable harm if the defendant can show: (1) the plaintiff

inexcusably delayed in bringing the action; and (2) prejudice to the defendant as a

---

[14] The plaintiff in Adams faced a similar predicament: "Without temporary injunctive relief, plaintiff would miss more opportunities to compete, practice, and learn the sport of wrestling. Such missed opportunities would cause her to fall behind in her development as an athlete and would quite probably, as a practical matter, prevent her from being able to compete in the future." Adams, 1919 F. Supp. at 1504–05.

result of the delay. In re Mushroom Transp. Co., Inc., 382 F.3d 325, 337 (3d Cir. 2004); E.E.O.C. v. Great Atl. & Pac. Tea Co., 735 F.2d 69, 80 (3d Cir. 1984).

To establish an inexcusable delay, the defendant must show that the plaintiff sat on its rights. Mushroom Transp. Co., 382 F.3d at 342–43. Generally, a short delay while the plaintiff diligently seeks counsel and examines its claim does not rise to the level of an inexcusable delay. Don't Ruin Our Park v. Stone, 802 F. Supp. 1239, 1245 (M.D. Pa. 1992) (McClure, J.). To establish prejudice, the defendant "must demonstrate that the delay caused a disadvantage in asserting and establishing a claimed right or defense." Mushroom Transp. Co., 382 F.3d at 337 (internal quotation and citation omitted).

The School District has not established that the Beatties inexcusably delayed pursuing this matter. Although the Beatties did not file the instant action until the eve of the wrestling season, they did take take diligent steps to find counsel in the spring of 2013, contacted the ACLU, filed the PHRC complaint, and contacted their current counsel shortly after the ACLU declined to represent them. Tr., B. Beattie, 21:6–16, 26:4; 23:8, 24:13–19; Pls.'s Exs. 3, 4, 5, 6. These actions do not warrant a finding of inexcusably delay. See Don't Ruin Our Park, 802 F. Supp. at 1245.

The defendants cannot establish prejudice to their claimed defenses as a

25

result of any delay by the Plaintiffs, nor do they attempt do so. Consequently, the Plaintiffs's claims are not barred by laches.

## C.    **Public Interest**

Finally, the public interest is not harmed by granting the injunction. The School District's primary arguments regarding the public interest concern the District's "duty to anticipate foreseeable dangers and to take reasonable steps to protect students from those dangers." Def.'s Br. Opp'n 15, Nov. 8, 2013, ECF No. 13. As previously articulated, the School District has not provided sufficient competent evidence that enforcing the policy prohibiting A.B. from wrestling protects students from the dangers of student safety, sexual harassment, and inappropriate conduct any more effectively than if A.B. is allowed to wrestle. See *supra*, at 3–10. The School District has appropriate policies in place to prevent and address these occurrences independent of the policy prohibiting A.B. from wrestling. Pls.'s Exs. 7, 8, 9. The Court concludes, then, that the public interest is not harmed by granting the injunction.

## III.    CONCLUSION

The Court is sensitive to and acutely aware of the School District's considerations and concerns. Despite these concerns, the balance of the law ultimately rests with the Plaintiffs at this juncture. The Court is confident that the

School District can weather the vicissitudes of fortune because, as both parties understand, the "art of living is more like the wrestler's art than the dancer's in this regard, that one must stand ready and firm to meet whatever besets it, even when unforseen."[15]

Consequently, the Beatties' Motion for a Preliminary Injunction is granted for the reasons discussed at length. The Court does not require a bond, because "complying with the preliminary injunction raises no risk of monetary loss to the defendant." Zambelli Fireworks Mfg. Co., Inc. v. Wood, 592 F.3d 412, 426 (3d Cir. 2010) (internal citations omitted).

An appropriate Order follows.


BY THE COURT:


Matthew W. Brann
United States District Judge

---

[15] MARCUS AURELIUS, MEDITATIONS 7.61.