IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BRIAN and ANGIE BEATTIE, on behalf of their minor daughter, A.B., | : : : | Case No. 4:13-cv-02655 |
| | : | |
| Plaintiffs | : | (Judge Brann) |
| | : | |
| v. | : | |
| | : | |
| LINE MOUNTAIN SCHOOL DISTRICT, | : : | |
| | : | |
| Defendant. | : | |

**MEMORANDUM**
July 10, 2014

Before the Court is the Plaintiffs' Motion for Attorney Fees (ECF No. 47)

pursuant to 42 U.S.C. § 1988(b), Federal Rule of Civil Procedure 54(d), and

United States District Court for the Middle District of Pennsylvania Local Rule

54.4. The underlying action concerned Plaintiffs' claims of unlawful sex

discrimination under 42 U.S.C. § 1983, the Equal Protection Clause of the

Fourteenth Amendment to the United States Constitution, and the Equal Rights

Amendment of the Pennsylvania Constitution. The Plaintiffs ultimately prevailed

on the merits and seek compensation for their attorneys.

For the reasons discussed herein, Plaintiffs' Motion for Attorney Fees is

granted in part. Plaintiffs' proposed hourly billing rates are unreasonable and are

1

reduced to comport with the reasonable rates in the Williamsport vicinage of the Middle District.  Furthermore, the number of the claimed hours billed are reduced for reasons discussed below.

## I.    BACKGROUND

The underlying facts of the case are familiar to the Parties.  Consequently, the Court only briefly reiterates.  On October 28, 2013, Plaintiffs Brian and Angie Beattie filed this action on behalf of their minor daughter, A.B., claiming that Defendant Line Mountain School District's policy prohibiting female students from participating on the all-male junior high and high school wrestling teams was unlawful sex discrimination under 42 U.S.C. § 1983, the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, and the Equal Rights Amendment of the Pennsylvania Constitution.  See Pls.' Compl., Oct. 28, 2013, ECF No. 1.  The Plaintiffs then filed a Motion for a Temporary Restraining Order and a Preliminary Injunction on October 30, 2013 (ECF No. 5).

The Court promptly granted the Motion for a Temporary Restraining Order, temporarily preventing Defendant from taking any action that would interfere with A.B.'s efforts to participate on the Line Mountain junior high wrestling team.  See Ct. Order, Nov. 1, 2013, ECF No. 8.  The Court then conducted a one-day hearing on the matter in consideration of the Motion for Preliminary Injunction on

November 21, 2013. The Parties subsequently briefed the matter.  The Court

granted the Plaintiffs' Motion for Preliminary Injunction on January 13, 2014.  <u>See</u>

Ct. Order, Nov. 5, 2013, ECF No. 44.

Thereafter, the Parties resolved the lawsuit and filed a Consent Decree on

April 2, 2014 (ECF No. 58).  Plaintiffs' attorneys now seek attorney's fees for their

services in the case.

## II.    DISCUSSION

### A.    <u>Statutory Authority to Award Attorneys Fees</u>

In <u>Alyeska Pipeline Service Co. v. Wilderness Society</u>, 421 U.S. 240 (1975),

the Supreme Court of the United States reaffirmed the "American Rule" that each

party in a lawsuit pays its own attorney's fees unless there is statutory authority

altering this status quo.  <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 429 (1983).  "In

response Congress enacted the Civil Rights Attorney's Fees Awards Act of 1976,

42 U.S.C. § 1988, authorizing the district courts to award a reasonable attorney's

fee to prevailing parties in civil rights litigation."  <u>Id.</u>  "The purpose of  § 1988 is to

ensure 'effective access to the judicial process' for persons with civil rights

grievances."  <u>Hensley v. Eckerhart</u>, 461 U.S. at 429 (quoting H. R. Rep. No. 94-

1558, at 1 (1976)).

Accordingly, the Court retains discretion to award reasonable attorneys fees

and costs to the prevailing party in civil rights litigation.  The statutory authority

for this discretion is 42 U.S.C. § 1988(b), which states:

> (b) Attorney's Fees
>
> In any action or proceeding to enforce a provision of sections 1981,
> 1981a, 1982, 1983, 1985, and 1986 of this title, title IX of Public Law
> 92-318 [20 U.S.C.A. § 1681 et seq.], the Religious Freedom
> Restoration Act of 1993 [42 U.S.C.A. § 2000bb et seq.], the Religious
> Land Use and Institutionalized Persons Act of 2000 [42 U.S.C.A. §
> 2000cc et seq.], title VI of the Civil Rights Act of 1964 [42 U.S.C.A.
> § 2000d et seq.], or section 13981 of this title, the court, in its
> discretion may allow the prevailing party, other than the United
> States, a reasonable attorney's fee as part of the costs . . . .

42 U.S.C.A. § 1988.

To merit an award of attorney's fees under this statute, a plaintiff must first

establish that she was the "prevailing party."  Hensley, 461 U.S. at 433.  Next, the

fees and costs must be reasonable.  See 42 U.S.C. § 1988; FED. R. CIV. P. 54(d);

Brytus v. Spang & Co., 203 F.3d 238, 242–43 (3d Cir. 2000).  Once it is

established that the plaintiff prevailed, the court must determine reasonable fees

under the lodestar formula, which is the "number of hours reasonably expended on

the litigation multiplied by a reasonable hourly rate."  Hensley, 461 U.S. at 433;

Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, 478 U.S. 546,

554 (1986); Maldonado v. Houstoun, 256 F.3d 181, 184 (3d Cir. 2001).  "The

amount of the fee, of course, must be determined on the facts of each case."

4

Hensley, 461 U.S. at 429–30.

"The party seeking attorney's fees has the burden to prove that its request for attorney's fees is reasonable." Rode v. Dellarciprete, 892 F.2d 1177, 1183 (3d Cir. 1990) (Nygaard, J.). "To meet its burden, the fee petitioner must 'submit evidence supporting the hours worked and rates claimed.'" Id. (quoting Hensley, 461 U.S. at 433). Once the fee petitioner meets this *prima facie* burden, "the party opposing the fee award then has the burden to challenge, by affidavit or brief with sufficient specificity to give fee applicants notice, the reasonableness of the requested fee." Id.

"The district court cannot 'decrease a fee award based on factors not raised at all by the adverse party.'" Id. (quoting Bell v. United Princeton Props., Inc., 884 F.2d 713 (3d Cir. 1989)). "Once the adverse party raises objections to the fee request, the district court has a great deal of discretion to adjust the fee award in light of those objections." Id.

"The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation . . . ." Hensley, 461 U.S. at 433. "The district court should exclude hours that are not reasonably expended." Rode, 892 F.2d at 1183. "Hours are not reasonably expended if they are excessive, redundant, or otherwise unnecessary." Id.

5

"After determining the number of hours reasonably expended, the district court must examine whether the requested hourly rate is reasonable." Id. "Generally, a reasonable hourly rate is to be calculated according to the prevailing market rates in the relevant community." Id. (citing Blum v. Stenson, 465 U.S. 886, 895 (1984)).  This "forum rate rule" dictates that, generally "an 'out-of-town lawyer would receive not the hourly rate prescribed by his district but rather the hourly rate prevailing in the forum in which the litigation is lodged.'" Interfaith Cmty. Org. v. Honeywell Intern., Inc., 426 F.3d 694, 704 (3d Cir. 2005) (Becker, J.) (quoting Report of the Third Circuit Task Force on Court Awarded Attorney Fees, 108 F.R.D. 237, 261 (1986)).

The forum rate rule contains two exceptions: "first, when the need for the special expertise of counsel from a distant district is shown; and, second, when local counsel are unwilling to handle the case." Id. at 705 (internal quotations and citations omitted).  "Thus, when a party can show that it qualifies for either exception, the Court may award attorney fees based on prevailing rates in the community in which the parties' attorneys practice." Id.

### B.   Plaintiffs' Attorneys' Fees Request Are Not Reasonable

1.   Plaintiffs' Attorneys' Meet Prima Facie Burden for Fee Entitlement

There is little dispute that the Plaintiffs are the prevailing party in the

litigation and that the relevant law entitles them to attorneys' fees at the Court's discretion.  <u>See generally</u> Def.'s Br. Opp'n, Mar. 13, 2014, ECF No. 51 [hereinafter Def.'s Br. Opp'n].  The initial burden rests with the Plaintiff to prove that its request for fees is reasonable by submitting competent evidence supporting the hours worked and rate claimed.  <u>Rode</u>, 892 F.2d at 1183.

The Plaintiffs' attorneys meet their initial burden establishing a prima facie case for fees through the submission of numerous affidavits and exhibits.  The Plaintiffs had two different groups of attorneys work on this matter: three attorneys from the law firm Flaster Greenberg PC ("Flaster Greenberg") and two from the public interest organization, the Women's Law Project.  The three Flaster attorneys, their requested hourly rates, and their claimed hours worked are as follows: partner Abbe F. Fletman ("Fletman") claiming an hourly rate of $525 per hour with 110.10 hours worked; associate Nella M. Bloom ("Bloom") claiming an hourly rate of $320 per hour with 84.40 hours worked; and associate Joanne M. Kelley ("Kelley") claiming an hourly rate of $250 per hour with 5.40 hours worked.  Pls.' Br. Supp. 12, Jan. 27, 2014, ECF No. 47-1 [hereinafter Pls.' Br.].  The total fees requested from the Flaster Greenberg attorneys are $85,227.50 and $1,198.28 in costs.  <u>Id.</u> at 14–15.

The two Women's Law Project attorneys, their requested hourly rates, their

claimed hours worked are as follows: Terry L. Fromson ("Fromson") claiming an

hourly rate of $450 with 105.6 hours worked; Amal Bass ("Bass") claiming an

hourly rate of $230 per hour with 9.2 hours worked.  Id. at 15, 19.  The total fees

requested by the Women's Law Project are $53,918 together with $338.11 in costs.

Id. at 19.  The total aggregate sum requested (including costs under Local Rule

54.4) by Plaintiffs' attorneys is $140,681.89 for 314.7 hours worked.  Id. at 15, 19.

The Defendants dispute both the reasonableness of the Plaintiffs' attorneys'

claimed hours and their hourly rates.  Accordingly, the Court addresses these issues

in turn.

### 2. Plaintiffs Attorneys' Claimed Hours Worked Are Reduced

The Plaintiffs' attorneys claim to have worked 314.7 hours on this case.

Pls.' Br., at 15, 19.  The Defendants challenge a number of these hours for being

unreasonable, excessive, and redundant.  Def.'s Br. Opp'n, at 11–15.

The Third Circuit has concluded that, generally, a party challenging a fee

request must only "submit briefs that identify the portion of the fee request being

challenged and state the grounds for the challenge with sufficient specificity to

give the fee applicants notice that they must defend the contested portion of their

fee petition."  Bell, 884 F.2d at 715.  Furthermore, "the party raising such

challenges, which affect an entire category (or several categories) of work, need

only specify with particularity the reason for its challenge and the category (or categories) of work being challenged; it need not point to each individual excessive entry." <u>Id.</u> at 721.

The Defendants have submitted briefs adequately challenging two areas of the Plaintiffs' attorneys' claimed hourly expenditures: the dubious necessity of Fletman and Fromson extensively reviewing each other's work, and the necessity of attorney Fromson's presence at the hearing on the Motion for Preliminary injunction.  <u>See</u> Def.'s Br., at 13.  The Court conducted a line by line analysis of the Plaintiffs' attorneys billing records and considers these objections in turn.  <u>See</u> <u>Interfaith</u>, 426 F.3d at 713.

> i.  *Many of Attorney Fletman and Fromson's Hours Reviewing and Revising Each Other's Work Were Duplicative and Unnecessary*

Concerning Defendant's challenge to the hours attorneys Fletman and Fromson spent reviewing each other's work, the Court notes that "when senior attorneys review each other's work and both bill at high hourly rates, it may be unreasonable to charge for both senior attorneys at the same rate and for the same number of hours."  <u>Walker v. Gruver</u>, 2013 U.S. Dist. Lexis 158219, *20 (M.D. Pa. Nov. 5, 2013)(Conner, C.J.).  Furthermore, "[d]ividing duties is an advantage of working with co-counsel."  <u>Shaw v. Cumberland Truck Equip. Co.</u>, 2012 U.S. Dist.

Lexis 44945, *13 (M.D. Pa. Mar. 30, 2012) (Conner, J.). "[T]he necessary corollary to commanding a high hourly rate is the expectation that counsel can handle a number of complicated tasks on her own." Choike v. Slippery Rock Univ. of Pa., 2007 WL 3120097, *10 (W.D. Pa. Oct. 22, 2007) (Ambrose, C.J.).

Comparing Fletman and Fromson's billing records, there exist a number of hours of duplicative, unnecessary review of the other attorney's work that are redacted from the final calculation. Two experienced attorneys with self-asserted expertise in this area of law need not extensively review one another's work, as skilled counsel should handle complicated tasks on her own. Id. The Court realizes that some level of review is warranted to ensure counsel are in accord with the factual and legal posture of the briefs, but extensive editing beyond that seems unnecessary.

The Court has identified 34.4 hours of attorney Fletman's time writing and reviewing the Complaint, Motion for Temporary Restraining Order and Preliminary Injunction, and the briefs following the hearing, many of which overlap with attorney Fromson's work and are of dubious necessity. The Court has identified 38.8 hours in which attorney Fromson claimed to work on these exact same briefs, either writing the drafts or spending excessive time reviewing Fletman's work. See, e.g., Rode, 892 F.2d at 1187. Because the Court finds much

of the revising and editing performed by one experienced co-counsel for the other to be unnecessary and redundant work, the Court reduces each of these hourly amounts by one half the stated sum. See id. Thus, Fletman's hour total is reduced by 17.2 hours, and Fromson's final hour total is reduced by 19.4 hours.

> ii.    *Attorney Fromson's Attendance at the Hearing Was Unnecessary*

Regarding attorney Fromson's attendance of the hearing, "[a] presence as a mere spectator is not compensable." In re Johnson & Johnson Derivative Litig., 2013 U.S. Dist. Lexis 180822, *92 (D.N.J. June 13, 2013). "Unless the magnitude of a case demands it, 'in many cases, the attendance of additional counsel representing the same interests as the lawyers actually conducting [the litigation is] wasteful and should not be included in a request for counsel fees from an adversary." Id. at *94 (quoting Planned Parenthood v. AG, 297 F.3d 253, 272 (3d Cir. 2002). Indeed, "[w]hen extra attorneys are present at a hearing, compensation can be denied for the gratuitous attorney." Id. (citing Lanni v. New Jersey, 259 F.3d 146 (3d Cir. 2001)).

Based on both the Defendant's challenge of attorney Fromson's attendance at the hearing and the Court's own observation of her participation, the Court finds that Fromson's presence at the hearing was unnecessary and that she should not be compensated for that time. See also Choike, 2007 WL 3120097 at *10 (reducing

attorney Fromson's hours for presence at a hearing where she neither questioned

witnesses or presented argument to the court).  Although Fromson contends that

her attendance was vital for a number of reasons, including helping with exhibits

and preparing to begin the post-hearing brief, those arguments are unavailing.

Fromson's attendance at the hearing was not vital to the prosecution of the case, as

she merely took notes and handed exhibits to attorney Fletman who conducted the

entire hearing.  To the extent this aid was necessary, which it did not appear to be,

it could have been competently performed by an associate with a lower billing rate.


As such, 13.8 hours of attorney Fromson's time on November 19 and 20,

2013, representing her travel to Williamsport from Philadelphia, her attendance at

the hearing, and her return trip to Philadelphia, are deducted from her time along

with costs associated with attendance.  The Court does not deduct the time

conferring with Fletman prior to the hearing or her time preparing exhibits and

witnesses, as this is reasonable preparation for the hearing.  Nevertheless, the

unnecessary nature of Fromson's presence at the hearing was readily observable.

The Defendant did not sufficiently challenge other aspects of the Plaintiffs'

attorneys claimed hours expended, including the hours of the associate attorneys,

and the Court may not reduce unchallenged hours *sua sponte*.  See Interfaith, 426

F.3d at 711.  Therefore, the two senior attorneys shall be compensated for the following hourly amounts: Fletman's claimed hours 110.1 hours are reduced by 17.2 hours, resulting in a total of 92.9 hours; Fromson's claimed 113.8 hours worked are reduced by 33.2 hours resulting in a total of 80.6 hours.

### 3.   Plaintiffs Attorneys' Are Subject to the Forum Rate Rule

Once the number of hours reasonably expended is fixed, the Court turns to consideration of the appropriate hourly rate.  Rode, 892 F.2d at 1183.  As previously discussed, "in most cases, the relevant rate is the prevailing rate in the forum of the litigation."  Interfaith, 426 F.3d at 705.  Plaintiffs' attorneys make three arguments with respect to this rule.  First, Plaintiffs' attorneys argue that they qualify for an exception to the forum rate rule because of their special expertise in this area of law.  See id.; Pls.' Br., at 9–11.  Second, Plaintiffs' attorneys argue that they qualify for the second exception to the forum rate rule because local counsel were unwilling to handle the case.  See Interfaith, 426 at 706–07; Pls.'s Br. Reply 9–10, Mar. 25, 2014, ECF No. 52 [hereinafter Pls.' Reply].  Finally, Plaintiffs' attorneys argue that, if the forum rate rule does apply, the forum is broader than the Williamsport vicinage of the Middle District.  Pls.' Reply, at 11.

The Defendants challenge all three assertions.  None of the Plaintiffs' attorneys' arguments are availing, and the Court addresses them *seriatim*.

### i.    *Special Expertise Exception Does Not Apply*

To invoke the first exception to the forum rate rule, counsel must show "the need for the special expertise of counsel from a distant district." Interfaith, 426 F.3d at 705.  Plaintiffs' attorneys have indeed demonstrated that they are particularly experienced in this area of the law.  They have not, however, demonstrated that there exists no competent local counsel available such that there was a *need* to import that expertise.  See id.

Both attorneys Fletman and Fromson demonstrated that they have substantial prior experience pursuing relief for violations of state and federal laws against gender discrimination in sports.  Pls.' Br., at 9.  They have served as co-lead counsel in multiple civil rights cases focusing on the rights of women and girls to participate in sport including, *inter alia*: Foltz v. Delaware State Univ., No. 10-149, 269 F.R.D. 419 (D. Del. 2010); Choike v. Slippery Rock Univ., No. 06-0622, 2006 WL 2060576 (W.D. Pa. July 21, 2006).  Furthermore, attorney Fletman's resume indicates she possesses considerable skill as an advocate in the courtroom, and she demonstrated that skill at the hearing in this matter.  See Pls.' Mot. Att'y Fees, Ex. A, Decl. Abbe F. Fletman, Jan. 27, 2014, ECF No. 47-4, 5 [hereinafter Pls.' Mot.].

While Plaintiffs' attorneys' experience and skill are noteworthy and do

factor into their fee award within the range of appropriate fees for the Williamsport

vicinage of the Middle District, their special expertise is not so exceptional that

there was a need to draw counsel from a distant district for this matter.  Cf.

Interfaith, 426 F.3d at 699 ("[I]f a prevailing party can show that it *required* the

particular expertise of counsel from another vicinage . . . then it will be entitled to

compensation based on prevailing rates in the community in which its attorneys

practice.") (emphasis added).  Plaintiffs' attorneys repeatedly assert that the issues

in this litigation were complex—verily, they were no more complex than ordinary

§ 1983 litigation on constitutional claims.  In fact, the Court granted the Plaintiffs'

Motion for a Temporary Restraining Order just two days after it was filed with full

confidence in its analysis that the Plaintiffs were likely to succeed on the merits of

their claims.  See Ct. Order, Nov. 1, 2013, ECF No. 8; Pls.' Mot. Prelim. Inj., TRO,

Oct. 30, 2013, ECF No. 5.

The Court takes judicial notice of its own docket, on which constitutional

litigation via § 1983 is a frequent fixture.  Wilson v. McVey, 579 F. Supp. 2d 685,

688 n.5 (M.D. Pa. 2008) (Conner, J.) (reiterating that federal courts may take

judicial notice of court dockets).  These § 1983 cases are often handled by a

number of different attorneys in the Williamsport vicinage of the Middle District,

many of whom possess the skill and level of competence necessary and sufficient

to handle this matter.  While the Court recognizes that Attorneys Fletman and

Fromson possess skill and expertise in this area of the law,[1] those qualities are not

so robust and the law is not so intractable that competent counsel cannot be found

within this vicinage of the Middle District.  See Interfaith, 426 F.3d at 699.  The

Court finds that Plaintiffs' attorneys do not qualify for the first exception to the

forum rate rule.

> ii.   *Plaintiffs' Attorneys' Did Not Demonstrate Local*
> *Counsel Was Unwilling to Handle the Case*

The second exception to the forum rate rule requires that the prevailing party

show by competent evidence that "local counsel were unwilling to take on the

litigation."  Interfaith, 426 F.3d at 699.  Although the Plaintiffs' Attorneys' assert

that this occurred in the nascent stages of this litigation, they fall short in proving

their assertion.

For example, in Interfaith Community Organization v. Honeywell Intern.,

Inc., 426 F.3d 694 (3d Cir. 2005), the United States Court of Appeals for the Third

Circuit affirmed the district court's finding that plaintiff successfully proved that

local counsel was unwilling to handle the case, when it submitted two detailed

---

[1] Notably, while the attorneys experience was not sufficiently unique to invoke the first exception to the forum rate rule, the Court does consider this skill and expertise in fixing their fees at the upper end of those that are appropriate for the Williamsport vicinage of the Middle District.

affidavits in support of this contention.  The plaintiff's affidavit stated that it

contacted at least five attorneys in the area of the litigation, all of whom declined to

take the case.  Interfaith, 426 F.3d at 707.

The second affidavit, submitted by a respected local academic with expertise

in the pertinent area of law, provided significant support for plaintiff's contention

that local counsel were unwilling to take the case because the affiant was unaware

of anyone who would.  Id.  According to the affiant, the firm that handled the

litigation was unique because it took on a complicated case without

contemporaneous payment of fees and expenses, unlike the firms of that vicinage

would do.[2]  See id.  The Third Circuit was particularly persuaded by the second

affidavit, presumably because the affiant had such knowledge and expertise in this

area of the law and was aware of most available options.  See id.

In this case, the primary evidence Plaintiffs' attorneys submit to support

their contention that local counsel were unwilling to take on this litigation is the

declaration of Plaintiff Brian Beattie.  In the declaration, Beattie states:

> 3.  After I contacted the office of the Pennsylvania Attorney
> General and before I filed a complaint with the Pennsylvania Human
> Relations Commission, I took steps to obtain representation from
> lawyers in Williamsport and Harrisburg.

---

[2] The firm that ultimately took on the litigation was described as a "rare bird."  Interfaith, 426 F.3d at 707.

17

> 4.  I talked to one Williamsburg [sic] lawyer and one Harrisburg lawyer by phone.  One was a woman and one was a man.  The firm in Harrisburg was Scaringi and Scaringi P.C.  I cannot remember the name of the firm in Williamsport.
>
> 5.  They each told me they could not help me because they did not specialize in the area of law that was involved.  When I inquired about whether they could refer me to another lawyer in the Williamsport or Harrisburg region, they each said no because they were unaware of anyone locally with the necessary expertise.

Decl. Brian Beattie, ¶¶ 3–5, Mar. 31, 2014, ECF No. 57.

The Plaintiffs allegedly contacted only a single attorney in the Williamsport vicinage of the Middle District, which is neither a sufficiently exhaustive search nor a fair sample of the representation available in the community.  In further contrast to the <u>Interfaith</u> decision, Plaintiffs do not provide additional declarations that support the contention that local counsel was unwilling to take the case.  Plaintiffs' submitted declarations concern both the expertise of Fletman and Fromson, and the appropriate hourly rate, but they do not provide any specificity on the contention that local counsel were in fact unwilling to litigate these issues.  <u>See</u> Pls.' Mot., Ex. C, Decl. Bridget E. Montgomery; Pls.' Mot., Ex. D, Decl. Thomas B. Schmidt, III.  In further contrast to the facts of <u>Interfaith</u>, these declarants do not assert that the fee structure, or any similar aspect of Fletman and Fromson's representation, differed markedly from firms within the vicinage such that those firms would be unwilling to litigate in the same manner.  <u>See Interfaith</u>,

18

426 F.3d at 707.  Nor did the Plaintiffs provide a single declaration from a practitioner based in the Williamsport vicinage of the Middle District.

Plaintiffs further argue that the Beatties approached the Pennsylvania Attorney General, the Pennsylvania Human Relations Commission and the American Civil Liberties Union of Pennsylvania, and none of those organizations referred the Beatties to any lawyer in either Williamsport or the Middle District, but to the Women's Law Project.  Pls.' Reply, at 10.  This fact does not demonstrate local counsel were unwilling to take the case.  These entities may have been unaware or unfamiliar with local counsel, or simply reaffirming an existing relationship with the Women's Law Project.  Whatever the reason, it does not demonstrate local counsel was unwilling, particularly without any evidence of a reasonable local search for counsel and lack of affiants declaring there was none available.

Consequently, because the Plaintiffs did not satisfactorily demonstrate that local counsel were unwilling to handle this case by competent evidence, the Court finds that Plaintiffs' do not qualify for the second exception to the forum rate rule.  See Interfaith, 426 F.3d at 707.  Thus, the Court holds that the forum rate rule applies to the Plaintiffs' and their attorneys and that they do not qualify for either exception to that rule.

>            *iii.*     *The Forum Is Unequivocally the Vicinage of the*
>                       *Litigation*

Having determined that the forum rate rule applies, the Plaintiffs' attorneys

assert that the relevant forum includes the entire Middle District of Pennsylvania,

which consists of three divisions: the Scranton vicinage, the Harrisburg vicinage,

and the Williamsport vicinage.  The relevant law makes clear, however, that the

applicable forum is the Williamsport vicinage specifically, rather than the Middle

District as a whole.  See Interfaith, 426 F.3d at 703–04.

In the Interfaith decision, Judge Becker stated that "a prevailing party's

attorneys should be compensated based on market rates in the *vicinage* of the

litigation," absent an applicable exception.  Interfaith, 426 F.3d at 699 (emphasis

added).  Vicinage is defined as the "[v]icinity; proximity . . . the place from which

jurors are to be drawn for trial."  BLACKS LAW DICTIONARY 1797 (10th ed. 2014).

It is quite clear, then, that the forum rate rule applies the prevailing rates of the

relevant vicinage in which the litigation occurred.[3]

The Williamsport vicinage of the Middle District of Pennsylvania is not an

---

[3] Acting at a time when "the Third Circuit [had] never authoritatively resolved the issue of whether the relevant community is the law firm's community or whether it is the community in which the case is actually litigated," a magistrate judge of this court found that the relevant community in a bad faith insurance claim indued "the entire Middle District and Eastern District of Pennsylvania."  Valenti v. Allstate Ins. Co., 243 F. Supp. 2d 200, 207–08 (M.D. Pa. 2003). After the Interfaith decision, however, it is clear that the forum rate rule applies to the vicinage of the litigation absent an applicable exception.  See Interfaith, 426 F.3d, at 703.

amorphous indefinite region, or an area confined to the city itself, as Plaintiffs'

attorneys alternatively assert.  Rather, its geographic constitution is quite precise;

it includes the following counties: Bradford, Tioga, Potter, Sullivan, Lycoming,

Clinton, Cameron, Centre, Union, Snyder, Northumberland, Montour, and

Columbia.  Consequently, the range of acceptable fees are those charged within

these counties for this type of litigation.

> iv.   *Fees for § 1983 Litigation in the Williamsport Vicinage*
> *of the Middle District of Pennsylvania*

The Plaintiffs' attorneys did not submit direct evidence on the range of

appropriate fees for this work specifically within the Williamsport vicinage of the

Middle District; the Defendant, however, provided affidavits of several

Williamsport practitioners that are instructive on the appropriate range of fees

within the vicinage.[4]  Defendants submitted the declaration of J. David Smith, an

attorney practicing with a prominent Williamsport law firm since 1983 with

extensive civil litigation practice in federal court in the Williamsport vicinage.  Mr.

Smith declared that, based on his experience, "an appropriate hourly rate for a

skilled attorney on the plaintiff's side with necessary legal experience to provide

---

[4] The declarations Plaintiffs' attorneys provided in support of their motion were from practitioners based in Harrisburg and considered market rates for the Middle District as a whole, not specifically the Williamsport vicinage of the Middle District.  <u>See</u> Pls.' Mot., Ex. C, Decl. Bridget E. Montgomery; Pls.' Mot., Ex. D, Decl. Thomas B. Schmidt, III.

competent legal services in a case of this type is in the range of $250 to $325 per hour for partners and some lesser hourly rate for associates, generally ranging between 50% and 80% of partner rates." Def.'s Br. Opp'n, Ex F., Decl. J. David Smith ¶ 15, Mar. 13, 2014, ECF No. 51-6. Smith adds that his own rate for federal court defense litigation is $200 per hour and his standard rate for plaintiff employment cases is $275 per hour. Id., ¶ 14.

Another Williamsport practitioner, Ryan M. Tira, declared that the prevailing hourly rates for a local attorney with the necessary skill for this case is, in his estimation, $200 to $225 per hour for a partner and $150 to $200 for an associate. Def.'s Br. Opp'n, Ex. E, Decl. Ryan M. Tira ¶10, Mar. 13, 2014, ECF No. 51-5. A third declaration by Robert Seiferth, an attorney practicing in Williamsport since 1974 who has tried approximately twelve (12) jury cases in Federal Court in Williamsport, provides his estimation of the prevailing hourly rate for a skilled attorney with the necessary experience to provide competent legal services for this matter to be in the range of $160 to $200 per hour for both a partner and an associate. Def.'s Br. Opp'n, Ex. D, Decl. Robert Seiferth ¶10, Mar. 13, 2014, ECF No. 51-4. Finally, declarant Frank J. Lavery, Jr., a Harrisburg attorney with 28 years experience finds the reasonable rates for this matter to be $250 to $275 per hour for a partner and $150 to $175 per hour for an associate.

Def.'s Br. Opp'n, Ex. C, Decl. Frank J. Lavery ¶10, Mar. 13, 2014, ECF No. 51-3.

These declarations are instructive and comport with the Court's understanding of the relevant ranges for legal fees within the Williamsport vicinage of the Middle District.  The Court finds that a reasonable fee range in this vicinage for a partner with the necessary skill and experience to provide competent legal services in this type of litigation is in the range of $180 to $325 per hour. The Court considers the evident trial skill of attorney Fletman and the specific expertise of both attorneys Fletman and Fromson in fixing their rates at the high end of this range.

A reasonable rate in the Williamsport vicinage for attorney Fletman in this matter, and considering her skill and experience on these issues, is $325 per hour. Corresponding reasonable rates for her associate Bloom is $200 per hour and associate Kelley is $150 per hour.  Applying the previously calculated reasonable hours expended to complete the lodestar, Flaster Greenberg is entitled to $47,882.50 for attorneys fees plus $1,198.28 in costs, for a total of $49,080.78.

Attorney Fromson's reasonable hourly rate for this matter is $250.  A corresponding reasonable rate for her associate Bass is $150 per hour.  Applying the lodestar formula, the Women's Law Project is entitled to $21,530 attorneys fees and $338.11 in costs for a total of $21,868.11.

## III.    CONCLUSION

The Plaintiffs' attorneys are entitled to attorneys fees based on the

reasonable hourly rates in the Williamsport vicinage of the Middle District of

Pennsylvania for this type of litigation and in consideration of their skill and

expertise.  The final calculation of the lodestar formula as applied to this case

entitles the Flaster Greenberg firm to a total of $49,080.78 and the Women's Law

Project to $21,868.11, reflecting reasonable attorneys fees and costs.

An appropriate Order follows.

BY THE COURT:

s/ Matthew W. Brann
Matthew W. Brann
United States District Judge